UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STONE,<br><br>             Plaintiff,<br><br>       v.<br><br>U.S. SECURITY ASSOCIATES, INC.,<br><br>             Defendant. | Case No.  15-cv-00235-JST<br><br>**ORDER GRANTING MOTION FOR TRANSFER OF VENUE AND GRANTING REQUEST FOR JUDICIAL NOTICE**<br><br>Re: ECF No. 17 |

Before the Court is a Motion for Transfer of Venue filed by Defendant U.S. Security Associates, Inc. ("USSA"), ECF No. 17, and a request for judicial notice in support of the motion, ECF No. 17-1. Plaintiff Robert Stone opposes transfer. ECF No. 18. For the reasons set forth below, the Court will grant both the motion to transfer and the request for judicial notice.

I.  **BACKGROUND**

In this putative class action for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681, *et seq.*, Plaintiff Stone alleges that USSA uses noncompliant disclosure forms to procure, or cause to be procured, consumer reports for employment purposes. Compl., ECF No. 1. Stone is a California resident who applied for employment with USSA around February 2014. Id. ¶¶ 5, 14. He alleges that, as part of the employment application process, he signed an Applicant Consent Form that did not comply with the FCRA, and that subsequently USSA procured or caused to be procured a consumer report concerning him from a credit reporting agency. Id. ¶¶ 14-15. Stone seeks to represent a class of:

> All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom U.S. Security Associates, Inc. or any of its related companies procured or caused to be procured a consumer report for employment purposes within the period prescribed by FCRA, 15 U.S.C. § 1681p without first providing a clear and conspicuous disclosure in writing to the consumer at any time before the report

> was procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes.

Id. ¶ 22. On his employment application, Stone listed his place of residence as Hawthorne, California. Declaration of Carol Longmore ("Longmore Decl.") Ex. A, ECF No. 17-6. Stone was hired to work for a USSA branch in Commerce, California, and assigned to a site located in Los Angeles, California. Longmore Decl., ECF No. 17-4 ¶ 10.

Defendant USSA, a security services company, is a Delaware corporation headquartered in Roswell, Georgia. ECF No. 13 ¶ 7; Longmore Decl. ¶ 2. It has operations in approximately 134 cities in 41 states. Longmore Decl. ¶ 2. Carol Longmore, the USSA Compliance Director responsible for USSA's background check policies and procedures, works at the Roswell headquarters and lives nearby. Id. ¶¶ 1-3. In her role as Compliance Director, Longmore has worked with the Georgia-based USSA Human Resources department, as well as former USSA employees Jim Flowers and Jon Dimalanta, to revise USSA's Applicant Consent Form, which is intended to comply with the FCRA. Id. ¶ 4. The last known address for Flowers is in Roswell, Georgia, and the last known address for Dimalanta is in Fort Mill, South Carolina. Id.

USSA branch offices obtain consent for background checks for employment purposes using either USSA's Applicant Consent Form or forms provided by the consumer reporting agency that conducts the background check. Id. ¶ 5. During the last five years, USSA has used the services of nine such consumer reporting agencies: three based in New York, four based in Georgia, one based in Pennsylvania, and one based in South Carolina. Id. ¶ 11. Since approximately 2014, USSA has used an applicant tracking system that records electronic signatures on USSA's Applicant Consent Forms. Id. ¶ 6. In addition, consent forms for hired applicants who begin work with USSA are uploaded to a database that is accessible from USSA's Georgia headquarters. Id. ¶ 7. Signed consent forms for other applicants, to the extent they have been retained, are available only at the branch offices. Id. ¶ 8.

Plaintiff filed his class action complaint in this district on January 16, 2015. ECF No. 1. Defendant filed its answer on February 17, 2015. ECF No. 13. On March 5, 2015, Defendant filed the instant motion to transfer venue to the Northern District of Georgia. ECF No. 17.

2

1  Plaintiff opposes the motion. ECF No. 18.

2  This Court has jurisdiction over this action pursuant to 15 U.S.C. section 1681p.

## II.  REQUEST FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of the judicial caseload profiles of the Northern District of California and the Northern District of Georgia, which are created by the Administrative Office of the U.S. Courts and are available on the U.S. Courts website. ECF No. 17-1. Pursuant to Rule 201(b) of the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). The Court concludes that these documents are proper subjects of judicial notice and grants Defendant's request. See United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) ("Courts may take judicial notice of some public records, including the records and reports of administrative bodies" (internal quotation marks omitted)); Caltex Plastics, Inc. v. Great Pacific Packaging, Inc., No. 14-cv-2794-RSWL (JEMx), 2014 WL 4060144, at *5 n.2 (C.D. Cal. Aug. 12, 2014) (granting request for judicial notice of judicial caseload profiles).

## III.  MOTION TO TRANSFER

### A.  LEGAL STANDARD

Where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). It places "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622). In deciding a motion to transfer under section 1404, a court must weigh "a number of case-specific

United States District Court
Northern District of California

3

1  factors." Id.

> For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The moving party bears the burden to show that the proposed transferee district is the more appropriate forum for the action. Id. at 499.

### B.   DISCUSSION

#### 1.   Venue in the Target District

In considering a motion to transfer venue under 28 U.S.C. section 1404(a), the Court must first determine whether the action could have been brought in the target district. Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960). Because USSA maintains its corporate headquarters and is subject to personal jurisdiction in Roswell, Georgia, it is clear that the action "might have been brought" in the Northern District of Georgia. 28 U.S.C. § 1404(a). Accordingly, the Court turns to the question of whether the action should be transferred "[f]or the convenience of parties and witnesses, in the interest of justice." Id.

#### 2.   Plaintiff's Choice of Forum

Plaintiff argues that the motion to transfer venue should be denied in deference to his choice of forum. In most cases, a plaintiff's choice of forum is accorded "great weight." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). But "[w]hen, as here, the plaintiff does not reside in the forum, none of the alleged operative facts with respect to the plaintiff's claims occurred in this district, and the plaintiff acts as a representative of a nationwide rather than a statewide class action, that choice 'is entitled to only minimal consideration.'" Roe v. Intellicorp Records, Inc., No. 12-cv-02567-YGR, 2012 WL 3727323, at *3 (N.D. Cal. Aug. 27, 2012) (quoting Lou, 834 F.2d at 739); see also In re Funeral Consumers Antitrust Litig., No. 05-01804-WHA, 2005 WL 2334362, at *7 (N.D. Cal. Sept. 23, 2005) ("[I]f there is any indication that plaintiff's choice of

forum is the result of forum shopping, plaintiff's choice will be accorded little deference." (internal quotation marks omitted)). Although Stone is a California resident, he asserts no connection between his case and the Northern District of California, except that USSA regularly does business here. Compl. ¶ 3. In these circumstances, the Court concludes that Plaintiff's choice of forum carries very little weight.

### 3. Convenience of Parties

USSA argues that transfer to the Northern District of Georgia would be more convenient for the parties and witnesses because the material events and witnesses in this case are centered on USSA's corporate headquarters in Roswell, Georgia. ECF No. 17 at 1. USSA emphasizes that corporate decisions regarding USSA's background check policies were made in Georgia, and argues that nationwide FCRA class actions are "routinely" transferred to the forum in which the defendant has its principal place of business and makes decisions regarding FCRA compliance. Id. at 6 (citing Smith v. HireRight Solutions, Inc., No. 09-cv-6007, 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010) ("Multiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events, and thus the appropriate venue, is generally the place where the defendant credit reporting agency conducted its business.")).

Defendant also states that most of the relevant documentary evidence is located in Georgia. However, this factor does not significantly favor transfer. "With technological advances in document storage and retrieval, transporting documents does not generally create a burden." David v. Alphin, No. 06-cv-04763-WHA, 2007 WL 39400, at *3 (N.D. Cal. Jan. 4, 2007).

Plaintiff, who is a California resident, asks the Court to weigh the parties' relative means, and notes that his attorneys are admitted to practice in California, not in Georgia. ECF No. 18 at 8. The Court will not grant a motion to transfer simply to shift the inconvenience to the plaintiff. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). However, this is not a situation where an individual plaintiff has filed suit against a large corporation in her home district. Stone filed this case on behalf a nationwide class and claims no connection to the Northern District of California. In addition, the Court gives no weight to the convenience of litigating in California for counsel. See In re Funeral Consumers Antitrust Litig., 2005 WL

5

2334362, at *4 ("Although a few decisions have given weight to the location of counsel, most have not saying that it is not to be considered at all or to be given very little weight.").

This factor weighs in favor of transfer.

**4.      Convenience of Witnesses**

With respect to witnesses, USSA has identified three individual witnesses with relevant knowledge, all of whom reside in either Georgia or South Carolina. See ECF No. 21 at 5-7; Longmore Decl. ¶¶ 1-4.  It also suggests that employees in its human resources department, located in Roswell, Georgia, and employees of third party consumer reporting agencies, located in New York, Georgia, Pennsylvania, and South Carolina, have relevant knowledge. See ECF No. 21 at 5-6; Longmore Decl. ¶¶ 4, 11.  It would be more inconvenient for these witnesses to testify in this district than in the Northern District of Georgia.

Plaintiff suggests that convenience to witnesses is irrelevant because, in his view, the key issue in the case is a legal question involving the application of the FCRA to USSA's consent forms, and no witness testimony will be required.  ECF No. 18 at 5.  Defendant responds that testimony from USSA corporate witnesses will be necessary to identify the specific consent forms used and to explain how the documents were modified over the relevant timeframe, as well as to determine the appropriate level of any statutory penalties awarded.  ECF No. 21 at 6.  In addition, third party witnesses from credit reporting agencies will be needed to identify members of the putative class because only applicants who were subjected to a background check have a FCRA claim.  Id.  At this stage, it is impossible to anticipate how much witness testimony will be necessary to resolve this case.  Defendant's prediction that at least some testimony will be required appears plausible based upon the information about USSA's hiring practices contained in the Longmore Declaration.  Therefore the Court will not discount the importance of convenience to the witnesses.  See Hendricks v. StarKist Co., No. 13-cv-729-YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) ("The convenience of witnesses is said to be the most important factor in passing on a transfer motion.").

Plaintiff also argues that Defendant has not adequately described the material evidence that the witnesses will present.  ECF No. 18 at 5.  But the Court concludes that Longmore's declaration

1  adequately identifies her position at USSA, her residence, her anticipated testimony, and the
2  identities of two additional potential witnesses located in or near Georgia.

3  This factor also weighs in favor of transfer.

### 5. Interest of Justice

In evaluating the interest of justice, a court may consider public interest factors such as court congestion, local interest in deciding local controversies, the interest in having the trial of a diversity case in a forum that is at home with the governing law, conflicts of laws, and burdening citizens in an unrelated forum with jury duty. Decker Coal Co., 805 F.2d at 843.

In assessing court congestion, "the real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984). The judicial center profiles show that, as of September 2014, the median times from filing to disposition and from filing to trial in civil cases were comparable in the Northern District of Georgia and the Northern District of California (6.4 and 29.8 months in the Northern District of Georgia, and 7.9 months and 30.9 months in the Northern District of California). A difference of 1.5 months or less is not significant enough to weigh in favor of transfer. In addition, the two district courts are equally equipped to adjudicate federal FCRA claims. Stone has not asserted any state law claims.

The Court concludes that neither forum has a greater local interest in resolving the nationwide claims, which presumably affect putative class members in both districts. See Lax v. Toyota Motor Corp., No. 14-cv-01490-WHO, 2014 WL 3973482, at *6 (N. D. Cal. Aug. 14, 2014) ("There is no significant local interest in the controversy *as between* the Central and Northern Districts. That [Toyota Headquarters] is located in the Central District does not mean that the Central District has a significant or unique interest over the Northern District in resolving the nationwide claims at issue in this case."); Emerson v. Toyota Motor N. Am., No. 14-cv-02842-JST, 2014 WL 6985183, at *2 (N.D. Cal. Dec. 9, 2014). Because both forums have an interest in resolving the nationwide FCRA claims, the factor concerning burdens on prospective jurors is also neutral.

Balancing the relevant factors, the Court determines that Defendant has met its burden to

show that the Northern District of Georgia is a more appropriate forum for this action. The convenience of the parties and witnesses weighs in favor of transfer. The public interest factors are neutral. Only Plaintiff's choice of forum weighs against transfer and, as discussed above, this factor merits only minimal consideration in the analysis.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to transfer venue is granted. This action shall be transferred to the United States District Court for the Northern District of Georgia. All further proceedings in this case are stayed until the case is transferred.

IT IS SO ORDERED.

Dated: May 21, 2015

									_____
									JON S. TIGAR
									United States District Judge